ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC. | Case No. 07 - 743 C |
| Plaintiff, | |
| v. | |
| UNITED STATES, | |
| Defendant. | |

FILED
OCT 2 4 2007
U.S. COURT OF FEDERAL CLAIMS

**COMPLAINT**

Plaintiff, Advanced Technology Systems, Inc. ("ATS") by its undersigned attorneys, hereby submits its Complaint. ATS brings this action to set aside and enjoin the government's decision to override the mandatory stay imposed by the Competition In Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3)(A) when ATS filed a post-award bid protest with the Government Accountability Office ("GAO") challenging the government's award of a contract to Perot Systems Government Services, Inc. ("Perot"). The procuring agency's justification to override CICA's mandated statutory stay is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

**Jurisdiction**

1. This Court has jurisdiction over this matter under 28 U.S.C. § 1491(b)(1). *See* Ramcor Services Group, Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999); PGBA, LLC v. United States, 57 Fed. Cl. 655 (2003).

**Parties**

2. Plaintiff, Advanced Technology Systems, Inc. ("ATS") is a corporation organized under

the law of Virginia. ATS is located at 7915 Jones Branch Drive, McLean, Virginia 22102.

3. Defendant is the United States of America, acting through the Department of Education ("DOED" or "the Agency"). The contracting officer is James Hairfield whose address is U.S. Department of Education, Office of the Chief Financial Officer, Contracts and Acquisitions Management, 400 Maryland Avenue, S.W., Washington, D.C. 20202-4444.

**Statement Of Facts**

4. Solicitation No. ED-07-R-0034 was issued on May 1, 2007 and sought a contractor to provide the infrastructure for DOED's "Education Department Utility for Communication, Applications, and Technology Environment" ("EDUCATE") program.

5. The EDUCATE program calls for information technology ("IT") management services on a "24/7/365" basis including all necessary personnel, materials, services, and facilities, desktop, helpdesk support, systems/data center, e-mail, network, telecommunications, and multimedia, disaster recovery, and printer services.

6. The resulting 10-year contract is intended to replace the current DOED Government-Owned Contractor-Operated ("GOCO") IT environment with a Contractor-Owned Contractor-Operated ("COCO"), *i.e.*, fully out-sourced, IT environment.

7. Prior to the award that is subject to this dispute, Computer Sciences Corporation ("CSC") was the incumbent contractor performing IT services covered by the EDNet contract, which the EDUCATE contract will supersede even though there are remaining unexercised option periods on the EDNet contract.

8. ATS was the principal subcontractor to CSC under the EDNet contract, and prior to that, was the principal subcontractor to Science Applications International Corporation ("SAIC").

9. ATS has been performing information technology services for DOED for the past eight

years.

10. The Solicitation's evaluation criteria provided that non-price evaluation factors were more important than the price factor, and consisted of the following factors and summarized subfactors listed in descending order of importance: 1) Technical Approach; 2) Management Approach; 3) Past Performance; and 4) Subcontracting Plan.

11. DOED required offerors to respond to clarification questions and respond to a DOED OIG audit after the submission of initial proposals. Subsequently, an oral presentation was provided. DOED held face-to-face discussions. Best and Final Offers were then submitted.

12. On September 28, 2007, DOED advised ATS by letter that award had been made to Perot for the base year and the nine option years at a total price of $398,750,750.00.

13. ATS timely requested a debriefing which DOED afforded to ATS in person on October 9, 2007.

14. On October 12, 2007, based on information learned at the debriefing, ATS filed a bid protest with GAO on the following grounds: (1) DOED failed to perform a proper price analysis to determine if Perot's price was realistic and balanced; (2) the significant number of strengths identified in ATS' proposal by the evaluators should have resulted in higher point scores/ratings for ATS, which, in any event, was rated more highly than Perot for its technical approach as well as for all non-price factors combined; (3) the technical and price evaluation panels improperly failed to make an award recommendation to the Source Selection Advisory Board, leading in turn to an uninformed source selection decision by the SSA; and (4) Perot has experienced performance problems under a relevant contract it is currently performing for DOED which should have resulted in a severely downgraded Past Performance score/rating.

15. ATS' timely-filed protest, Docket No. B-310641.001, triggered the automatic CICA stay

requiring DOED to suspend contract performance immediately. 31 U.S.C. § 3553(d)(3)(A)(B).

16. On October 18, 2007, DOED advised by letter that it was overriding the CICA stay. On October 19, DOED released a redacted Determination and Finding ("D&F") document dated October 18 to justify its override decision on the twin grounds urgent and compelling circumstances and best interests of the government. (Exhibit 1).

17. The D&F improperly fails to distinguish as to which factors support its urgent and compelling determination as opposed to the best interest determination.

18. Despite the urgent and compelling assertion in the D&F, DOED did not award a contract until September 27, 2007, more than four and half months after the subject Solicitation had been issued.

19. DOED justified the CICA override in large part based on purported risks associated with continued CSC performance during the pendency of the GAO protest.

20. DOED's risk assumptions are based on previous network outages that occurred for approximately four days in April 2007 and on disruption of DOED's internal video application during April and May 2007. DOED asserts that CSC's poor performance caused these problems.

21. The D&F fails to refer to any network outages that have occurred since the Solicitation was issued in May, 2007. (Exhibit 2)

22. DOED alleges such outages, if continued, would cost the Department $1,152,000 per day, but the D&F contains no support for that figure. Id.

23. ATS in its capacity as a subcontractor to CSC under the EDNet contract asserts that the causes of the outages have been addressed and corrected by CSC and no additional network outages have occurred since April 2007, a period of nearly six months. Id.

24. To support its CICA override, DOED also points to the possible loss of CSC personnel

working on the EDNet contract. Id.

25. ATS believes, however, that the other subcontractors supporting CSC could provide additional staffing support and resources if in fact CSC is having difficulty in retaining the necessary employees. Id.

26. If Perot is permitted to continue performance while GAO decides ATS' protest, it likely that Perot will attempt to recruit and hire many of ATS' skilled and experienced personnel who are invaluable to ATS and cannot readily be replaced. Id.

27. Additionally, if Perot is allowed to continue contract performance, it will likely proceed to incur significant costs and enter into subcontract and vendor commitments during the immediate 60-day transition period from the EDNet contract to the EDUCATE contract that will make reawarding the contract to ATS difficult due to the high cost of termination should GAO sustain ATS' protest. Id.

29. Perot's contract performance at this time also poses a significant risk because Perot will presumably have to transfer DOED's current Washington, DC based IT operations to Perot's Texas locations or other location, only to have all of that effort and expense rendered wasteful and unnecessary should the EDUCATE contract ultimately be reawarded to ATS. Id.

**COUNT 1**
**Unlawful Override of CICA Stay**

30. Plaintiff realleges and incorporates paragraphs 1 through 29 of this Complaint as if set forth again in full.

31. ATS alleges that DOED's override decision was arbitrary, unreasonable, an abuse of discretion, and not otherwise in accordance with law. DOED has failed to establish under 31 U.S.C. § 3553 (d)(3)(C)(i) that either urgent and compelling circumstances warrant continued performance by Perot during the pendency of the GAO action or otherwise that Perot's continued

performance is in the best interests of the United States.

32. Plaintiff ATS has suffered injury and will continue to suffer injury because of DOED's arbitrary, capricious, and unlawful decision to override the CICA stay. ATS has no adequate remedy at law for this injury.

## Prayer For Relief

**WHEREFORE, PLAINTIFF**, ATS prays that this Court sustain this protest and provide the following declaratory and injunctive relief:

a. Enter a declaratory judgment holding that DOED's decision to override the CICA stay is arbitrary, capricious, or otherwise not in accordance with law, setting it aside, and reinstating the CICA stay to preserve the *status quo*;

b. Issue a temporary restraining order prohibiting DOED from overriding the CICA stay of performance of Perot's contract or otherwise permitting Perot to commence or continue performing the EDUCATE contract until ATS' motion for a preliminary injunction is heard and decided;

c. Issue a preliminary injunction prohibiting DOED from overriding the CICA stay of performance of Perot's contract or otherwise permitting Perot to commence or continue performing the EDUCATE contract until such time as this Court decides that ATS is entitled to a permanent injunction precluding any performance by Perot pending the outcome of ATS' GAO bid protest proceeding;

d. Issue a permanent injunction prohibiting DOED from overriding the CICA say of performance of Perot's contract or otherwise permitting Perot to proceed to perform the EDUCATE contract until such time as (A) GAO has resolved ATS' bid protest; (B) DOED has accomplished any subsequent recompetition or taken other corrective action; and (C) any

subsequent review actions have been completed;

e. Award Plaintiff ATS its costs, including reasonable attorneys fees and expenses; and

f. Grant such other and further remedy as this Court deems just and proper to afford ATS complete relief.

Dated: OCT. 24, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22101
Tel.: (703)749-1311
Fax: (703)714-8308

OF COUNSEL:
John G. Stafford
David T. Hickey
Sean M. Connolly

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF THE CHIEF FINANCIAL OFFICER

[redacted]

Determination and Findings

Decision to Override Statutory Stay of Performance for Contract # ED-07-CO-0042 (EDUCATE)

***Background:*** The purpose of the contract is to replace the existing EDNet Support Services contract, hereafter referred to as EDNet, currently being performed by Computer Sciences Corporation (CSC), and migrate from the current Government-Owned Contractor-Operated (GOCO) information technology (IT) environment to a Contractor-Owned Contractor-Operated (COCO) Managed Services IT environment. The U. S. Department of Education (ED) requires a contractor to provide a broad range of IT infrastructure services, such as desktop services, helpdesk support, e-mail services, network, telecommunications, and multimedia services, disaster recovery, and special projects, as a COCO managed services contract known as the Education Department Utility for Communications, Applications and Technology Environment (EDUCATE).

The objective of the EDUCATE contract is to quickly, efficiently, effectively, and economically provide and maintain a standard IT platform and infrastructure to support ED employees in meeting ED's mission. As such, the objectives of the contract are to:

a. Improve ED's services to students and customers;
b. Enable ED to become a more effective business partner with ED constituents;
c. Enable the Office of the Chief Information Officer to become a better information management enabler to ED program offices;
d. Reduce operational risk of ED's operations;
e. Achieve significant annual return on investments and reduction in ED's costs;
f. Measure the performance, improve performance, and improve accountability of ED's operations;
g. Enhance security and privacy;
h. Optimize, standardize, and consolidate ED's information management and technology infrastructure;
i. Centrally coordinate and streamline Department information management & technology processes and acquisitions.

***Contractual and Protest Background:*** Contract number ED-07-CO-0042 is broader in scope than the existing one held by the EDNet contractor, CSC, and incorporates other contracts and delivery orders for supplies and services, to include cable television, servers, personal computers, software, and other items, into a single contract. The scope

[redacted]

was expanded to transfer the ownership of the IT network from the government to the contractor to result in a more optimized state of performance. The request for proposals was issued on May 1, 2007 and stated that contract award would be based on a best value determination. The determination was to be based on both price and non-price factors. For this requirement, the proposals were evaluated against the following factors: 1) Technical Approach, 2) Management Plan, 3) Past Performance, 4) Subcontracting/Teaming and Socio-Economic Participation, and 5) Price. Factors 1-4 (non-price factors) are listed in descending order of importance. Factor 1 is more important than factor 2 and factors 1 and 2 combined are more important than factors 3-4 when combined. Factors 1-4 when combined are more important than Factor 5.

On September 27, 2007 the award of the contract was made to Perot Systems Government Services, Inc. (Perot) for a total price of $398,750,750. The base period of the contract is for fourteen months and includes transition. The contract also contains nine one-year option periods. The protestor received a debriefing at the United States Department of Education facility on 550 12th Street, SW, Washington DC on October 9, 2007 and filed a protest at the Government Accountability Office (GAO) on October 12, 2007. The stay of contract performance, pursuant to 31 U.S.Code § 3553(d)(3), was put in place on that date. The expected date of a GAO decision on this protest is January 22, 2008.

**Findings**

This Determination and Findings is issued under the authority of 31 U.S.Code § 3553(d)(3)(C) and concludes that the statutory stay be overridden and contract performance be authorized because of urgent and compelling reasons that significantly affect the interests of the United States. And further, the contract performance by Perot under contract number ED-07-CO-0042, is in the best interest of the United States and will not permit waiting for the GAO's decision on the protest. As discussed below the impact to performance and costs on critical programs will be severe if performance by Perot is not permitted.

**Significant Adverse Consequences Will Likely Occur if the Stay is Not Overridden**

Based on the performance of CSC to date, there is a significant risk to the Department of at least one and possibly more network outages lasting a day or more while GAO considers the protest and renders its decision. This finding is based on the Department's experience with CSC's performance to date. Since contract award CSC has [redacted] standards. As such, continuing CSC's contract for any longer than the barest minimum necessary period of time to transition to a new contractor raises the risk of additional system failures which would severely curtail Department operations and system security. This risk is unacceptable. Of particular note are the following instances of [redacted]

[redacted]

The entire network was down for a 41.1-hour period between April 16, 2007 and April 18, 2007. [redacted]

A week later, the entire network was down again for 56 hours between April 23, 2007 and April 25, 2007. [redacted]

Over 57% of the Department's telephone service consists of Voice over Internet Protocol (VoIP). This entire population was without telephone communications during the April 23 - April 25 outage.

The Department's internal video communications application (IP/TV) was down for the period of April 16, 2007 through May 30, 2007. [redacted]

[redacted] with the Federal Information Security and Management Information Act (FISMA) of 2002 and the Office of Management and Budget (OMB) Circular A-130. Specifically, certification and accreditation (C&A) for the entire network, and [redacted] Chantilly, VA help desk facility. [redacted]

[redacted]

The Contracting Officer's Representative has been told by [redacted] personnel that [redacted] are leaving the contract in anticipation of its expiration and that replacing those personnel will be difficult. Additionally, the Department has seen a reduction in the number of key personnel on the contract without those personnel being replaced. As the number of [redacted] employees on the contract declines the risk of performance failures, additional outages and the inability to respond to them increases.

[redacted]

CSC's overall performance has been [redacted] For example, the first annual contract performance evaluation report found CSC performing at an [redacted] level for the period of July 1, 2005 through June 30, 2006. Since the first annual performance report, performance has [redacted] According to the terms of the contract continued performance at [redacted] level requires that the Department consider terminating the order for default. At this point the Department considered terminating the contract for default, however there was not an acceptable substitute contractor readily available. In the alternative, the Department made a decision to recompete the contract, resulting in the EDUCATE solicitation. The 2nd annual performance evaluation report for the period of July 1, 2006 through June 30, 2007, found the contractor to be [redacted] This ultimately was demonstrated by a series of performance issues that were manifested in the major service outages listed above. In the Department's analysis the cause of the outages was never identified and therefore never fixed. Thus, the Department continues to be at risk in carrying out its mission.

**There Are No Reasonable Alternatives to Authorizing Performance Under Contract # ED-07-CO-0042**

There are two alternatives available other than overriding the statutory stay. An extension to the EDNet contract with CSC could be issued and the Department would continue to assume the risk of [redacted] until GAO issues its decision. The Department has already used the clause in the EDNet contract that gives it the option to extend services for up to six months. Currently, that clause has one month of additional performance available which would allow performance through December 31, 2007. Furthermore, there was an annual option period available to the Department, that was not exercised due to CSC's [redacted] Assuming a decision in the Department's favor, CSC would need to be under contract through March 22, 2007. This period includes the 100 days necessary for GAO to render a decision and the 60 days necessary for contract transition. From the Department's perspective this is an unacceptable length of time to continue to encounter [redacted] performance.

The Department could also make an urgent award to a contractor other than Perot and terminate the contract with CSC. This is not a realistic alternative. The time necessary to award a contract in this situation would not resolve the immediate problem but only exacerbate it since it would be difficult to ensure that the new contractor would provide reliable services in this situation. In my judgment this contractor would have a significant learning curve due to unfamiliarity with the system and the Department's operations and needs. Moreover, the contract would last for only about 6 months and it would be cost prohibitive.

[redacted]

Thus, the only reasonable alternative available to the Department is to eliminate the current risk of [redacted] performance and outages as soon as possible by overriding the stay of performance and authorize Perot to perform under contract ED-07-CO-0042.

**Analysis of Cost of Overriding The Stay Vs. Not Overriding the Stay**

While the Department is confident that it will prevail in this protest and receive a favorable decision from GAO, an analysis was made to determine the costs likely to be incurred in the event of an adverse decision. The analysis considered the costs that would be incurred in the event that GAO took the drastic step of recommending that the Department terminate the contract to Perot Systems and award the contract to the Protester. However, given the wide latitude that GAO has concerning possible remedies in sustaining protest, the likelihood that this particular remedy will be recommended is remote at this time.

It would cost the Department approximately $5,366,692 which includes transition, attorney fees, and termination costs, should the Department receive an adverse decision. However, it would cost the Department conservatively, $1,152,000 per day in terms of lost productivity, for each full day outage.

The potential damage to the government if performance by Perot is not permitted to perform under the EDUCATE contract has been analyzed and is considered to be of significantly less risk to the Department then would be realized upon extension of the EDNet contract.

**The Impact of the Override on Competition and the Integrity of the Procurement System**

The evaluation process concluded generally that both offers in response to the EDUCATE solicitation were found to [redacted] By overriding the stay the Department will have eliminated a [redacted], and in the event of an adverse decision from GAO on the protest, will result in at least a contractor that is [redacted] of performing. In addition, an issue could be raised that Perot will gain an unfair competitive advantage by virtue of its performance, until the time for a GAO decision. In my judgment, this is mitigated by ATS' performance [redacted], for the past eight years.

In the event the protest is sustained, the ED's evaluation team is in place and minimal time will be required for them to reacquaint themselves with the details of the solicitation, if it becomes necessary to evaluate another set of final proposal revisions

[redacted]

**Determination**

The Department is dependent upon its IT service contractor to accomplish its mission. Overriding the stay of performance would result in the accomplishment of the Department's mission. The current contractor's performance has been [redacted] during the period it has held this contract. By overriding the stay, the Department replaces a [redacted] contractor with a technically capable contractor. Even if the GAO reaches an adverse decision, and corrective action is necessary, the Department will still be in a more favorable position than it is without overriding the stay of performance. To continue to receive [redacted] puts the Department at an unacceptable risk in accomplishing its mission. It has been determined through a competitive process that Perot can perform the contract in question at [redacted] level. [redacted] performance by Perot will allow the Department to accomplish its mission while the protest is being decided.

On the basis of the above findings, which considers input from the OCIO and information obtained through monitoring the performance under the EDNet contract, it has been determined that performance under contract number ED-07-CO-0042, should be authorized to proceed in the face of GAO protest B-310641.001 filed by Advanced Technology Systems, Inc.

Recommended by:

James Hairfield, Contracting Officer

OCT 18 2007

Date

Approved by:

Hugh Hurwitz,
Head of Contracting Activity

10/18/07

Date

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC. Plaintiff, | ) | Case No.____________ |
| v. | ) | |
| UNITED STATES Defendant. | ) | |

**INJUNCTIVE ACTION AGAINST COMPETITION IN CONTRACTING ACT STAY OVERRIDE**

**DECLARATION OF TODD ROBYAK**

I, Todd Robyak, being over the age of eighteen (18) and competent to testify as to all matters herein, subject to the pains and penalties of perjury, do hereby depose and state as follows.

1. I am a Technical Director for Advanced Technology Systems, Inc. ("ATS") and am very familiar with ATS' proposal submitted in response to Solicitation No. ED-07-CO-0042 issued by the Department of Education ("DOED") to provide a contractor-managed information technology ("IT") system to be known as the Education Department Utility for Communications, Applications and Technology Environment ("EDUCATE") contract. EDUCATE is to reflect significant updates and improvements to the level of IT services and support provided by Computer Sciences Corporation ("CSC") under CSC's current EDNet support services contract with DOED, which CSC has held for the past two years.

2. ATS is a subcontractor to CSC under the EDNet contract. I am the Program Manager for ATS under this subcontract. ATS has more than eight years' of experience supporting both CSC and its predecessor providing quality IT management services to DOED.

3. ATS determined to pursue the EDUCATE procurement opportunity as a prime contractor with all of the necessary skills and experience to provide a contractor-managed IT system.

4. DOED awarded the EDUCATE contract to Perot Systems Government Services, Inc. ("Perot") on or about September 27, 2007. ATS has challenged that award in a bid protest filed with the Government Accountability Office ("GAO") following ATS' debriefing by DOED. It was my understanding that the Perot transition- in effort would be suspended until GAO issued its decision.

5. However, on October 19, I was informed that DOED had decided to continue with Perot's transition. I have reviewed a redacted copy of DOED's October 18 Determination and Findings ("D&F") document supporting the reasons for this action. Although much of the information has been redacted, from my technical and programmatic perspective I believe that DOED has not justified its decision to continue performance.

6. The current network and overall IT environment under CSC's EDNet contract has been supporting over 5000 DOED users nationwide and is presently stable, functioning, and providing responsive IT support to enable the DoED mission. This is evidenced by the fact that no appreciable downtime has occurred in the past five months or longer to my knowledge.

7. The existing DOED IT infrastructure is obsolete and is to be upgraded to industry standards or beyond under the EDUCATE contract. Therefore, the outages referenced in the D&F document and other performance issues are also DOED issues and cannot be solely attributed to CSC.

8. That is because the network outages referred to by DOED in the D&F actually occurred in April, 2007. To my knowledge as ATS' EDNet Program Manager, these have been addressed and remedial actions put into place by CSC including upper-level management involvement and reviews as well as closer interaction with major system vendors and suppliers such as CISCO. These actions to my further knowledge have rectified the situation to prevent the recurrence of further outages. In my view, DOED cannot reasonably anticipate more outages at DOED's estimated $1.152 million a day cost. The D&F also contains no support for that amount.

9. Transitioning from the current government-owned, contractor-operated EDNet contract environment to EDUCATE's fully contractor-owned and contractor-managed infrastructure environment requires complex planning, inter-state operations transfer, and implementation that will be accomplished over a period of one year. While the contractor will assume full responsibility from CSC after a 60-day transition period, full implementation of the new EDUCATE solution and resulting benefits in infrastructure improvements will not occur or be realized until later in 2008.

10. If Perot retains the EDUCATE contract, implementation will require Perot to transfer the current Washington, D.C.-based data center operations, help desk and support operations and associated personnel presumably to Perot's Texas locations. Thus, DoED

will not enjoy the immediate improved level of infrastructure reliability and associated lower risks upon assumption of the contract, as it claims in the D&F document.

11. Rather, such improvements will not substantially occur, if at all, until proposed operations are commenced by Perot in its Texas locations. In fact, the transferring of such operations on such a large scale presents its own unique risks to DOED that, in my view, far outweigh those posed by the continuation of the current performance by CSC, and certainly at least during the resolution of the protest at GAO.

12. If Perot is allowed to continue performance, it likely will attempt to recruit and hire away many of ATS' skilled and experienced personnel, which will cause a significant and potentially irreplaceable loss of valuable talent.

13. If Perot is allowed to continue performance, it likely will proceed to incur significant costs and enter into subcontract and vendor commitments over the next few months to the extent DOED will be in a position to claim that its termination liability will be so great that it cannot reaward the contract to ATS if GAO sustains ATS' protest.

14. I also note that DOED has clearly indicated in the D&F its determination that both ATS and Perot can successfully perform the EDUCATE contract. Therefore, there is no reason for DOED to urge urgency here because ATS can certainly support CSC to the extent necessary to ensure all proper EDNet services and support is provided during the 160 days for GAO to decide the protest and for the EDNet contract to be transitioned to the new EDUCATE contractor, be it Perot or ATS.

15. Also, I further note that there are subcontractors supporting CSC besides ATS who could provide additional support augmenting CSC staffing needs if CSC in fact is having difficulty retaining personnel as claimed by DOED in the D&F document.

I solemnly affirm under the penalties of perjury pursuant to 28 U.S.C. § 1746, and based on personal knowledge, that the contents of the foregoing Declaration are true.

10/24/2007
Date

Todd M. Robyak
Todd Robyak