ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 07-743 C |

FILED
OCT 2 4 2007
U.S. COURT OF FEDERAL CLAIMS

**PLAINTIFF ADVANCED TECHNOLOGY SYSTEMS, INC.'S MOTION FOR PRELIMINARY INJUNCTION TO PREVENT UNLAWFUL OVERRIDE OF COMPETITION IN CONTRACTING ACT STAY OF PERFORMANCE**

Plaintiff Advanced Technology Systems, Inc. ("ATS") hereby moves the Court, pursuant to RCFC 65(a) and (b), for a preliminary injunction enjoining Defendant, its officers, employees and agents from further implementing its unlawful override of the automatic stay of performance imposed by the Competition In Contracting Act ("CICA"), 31 U.S.C. § 3553 (d)(3)(A), (B), on Contract No. ED-07-CO-0042, awarded to Perot Systems Government Services, Inc. ("Perot") under RFP No. ED-07-R-0034, by Defendant through the Department of Education, and thereby allowing performance of said contract to proceed.

Defendant has specifically failed to comply with the requirements of 31 U.S.C. 3553 § (d)(3)(C)(i) to show that continued performance by Perot is necessary due to urgent and compelling circumstances or otherwise that continued performance is in the best interests of the United States.

Plaintiff ATS requests that this preliminary injunction remain in force until this Court issues a permanent injunction prohibiting Defendant from allowing Perot to continue to perform until ATS' bid protest now pending before the U.S. Government Accountability Office ("GAO"), GAO No. B-310641.001, is decided by GAO, which decision under GAO procedures, 4 C.F.R. § 21.9 (a) is required to be resolved no later than January 22, 2008.

Dated: October 24, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22101
Tel.: (703)749-1311
Fax: (703)714-8308

OF COUNSEL:
John G. Stafford
David T. Hickey
Sean M. Connolly

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 07-743 C |

FILED
OCT 24 2007
U.S. COURT OF FEDERAL CLAIMS

**PLAINTIFF ADVANCED TECHNOLOGY SYSTEMS, INC.'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER TO PREVENT UNLAWFUL OVERRIDE OF COMPETITION IN CONTRACTING ACT STAY OF PERFORMANCE**

Plaintiff Advanced Technology Systems, Inc. ("ATS") hereby applies to the Court, pursuant to RCFC 65, for an immediate temporary restraining order enjoining Defendant, its officers, employees, agents and representatives from further implementing its unlawful override of the automatic stay of performance imposed by the Competition In Contracting Act ("CICA"), 31 U.S.C. § 3553 (d)(3)(A), (B) on Contract No. ED-07-CO-0042, awarded under RFP No. ED-07-R-0034 to Perot Systems Government Services, Inc. ("Perot"), by the Department of Education, and thereby allowing performance of said contract to proceed.

Defendant has specifically failed to comply with the requirements of 31 U.S.C. § 3553 (d)(3)(C)(i) to show that continued performance by Perot is necessary due to urgent and compelling circumstances or otherwise that continued performance is in the best interests of the United States.

Plaintiff ATS requests that this temporary restraining order remain in full force

and effect until the Court hears and decides ATS' Motion for Preliminary Injunction.

The grounds supporting this Application are set forth in the accompanying Memorandum of Points and Authorities.

ATS respectfully requests an immediate hearing on this Application.

A proposed Order granting this Application is attached.

Dated: October 24, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22101
Tel.: (703)749-1311
Fax: (703)714-8308

OF COUNSEL:
John G. Stafford
David T. Hickey
Sean M. Connolly

ORIGINAL

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Case No. 07-743 C |

FILED
OCT 2 4 2007
U.S. COURT OF FEDERAL CLAIMS

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND MOTION FOR A PRELIMINARY INJUNCTION**

Plaintiff, Advanced Technology Systems, Inc. ("ATS"), submits this Memorandum of Points and Authorities in Support of its Application for a Temporary Restraining Order and Motion for a Preliminary Injunction herein. Plaintiff's corresponding Complaint challenges the Department of Education's ("DOED's", "the Department's" or "the Agency's") arbitrary and capricious decision to override the automatic stay issued under the Competition in Contracting Act ("CICA"), 31 U.S.C. § 3553(d)(3)(A)(B) as a result of a bid protest filed by ATS with the Government Accountability Office ("GAO") on October 12, 2007 (Docket No. B-310641.001).

**QUESTION PRESENTED**

Whether ATS is entitled to declaratory or injunctive relief to prevent DOED from overriding the statutory stay of contract performance imposed by CICA as result of ATS' protest?

**SUMMARY OF THE MOTION**

ATS can demonstrate: (1) that it has a strong likelihood of success on the merits; (2) that it will be irreparably harmed if injunctive relief is not granted; (3) the harm ATS will suffer if

injunctive relief is not granted would outweigh the harm that the injunction would cause DOED; and (4) an injunction is in the public interest. ATS is entitled to injunctive relief because DOED's decision to override the CICA stay was unlawful, arbitrary and capricious. DOED's Determination and Findings ("D&F") demonstrates that the Department failed to take into account Congressional intent in passing CICA, failed to consider important aspects of issuing the stay override, and failed to offer an adequate explanation for its actions.

**STATEMENT OF FACTS**

DOED issued Solicitation No. ED-07-R-0034 on May 01, 2007 seeking a contractor to provide information technology infrastructure goods of services for DOED's "Education Department Utility for Communication, Applications, and Technology Environment" ("EDUCATE") program. The EDUCATE program calls for services on a "24/7/365" basis including all necessary personnel, materials, services, and facilities, for desktop, helpdesk support, systems/data center, e-mail, network, telecommunication, and multimedia, disaster recovery, and printer services.

The resulting 10-year contract was intended to replace the current Government-Owned Contract-Operated IT environment with a Contractor-Owned Contractor-Operated ("COCO") IT environment. Prior to the award that is subject to this dispute, Computer Sciences Corporation ("CSC") was the incumbent contractor performing many of the IT services covered by the EDUCATE program. ATS was the principal subcontractor to CSC under the incumbent contract, and prior to that, was the principal subcontractor for Science Applications International Corporation, ("SAIC"). ATS has been performing information technology services for DOED for the past eight years.

On September 28, 2007, DOED advised ATS that award had been made to Perot

Systems, Inc. ("Perot") for the base year and the nine option years at a total price of $398,750,750.00. Overall ATS was ranked number one technically and number one as well for all non-price factors based on qualitative numeric points assigned by the evaluation panels. However, DOED advised ATS that Perot was selected for award based on price. ATS received a debriefing from DOED on October 9, 2007. On October 12, 2007 ATS filed a timely bid protest with GAO, Docket No. B-310641.001, triggering the automatic CICA stay requiring DOED to suspend contract performance immediately and to continue such suspension until GAO decides the protest. 31 U.S.C. § 3553 (d)(3)(A)(B).

On October 19, 2007 DOED issued a redacted Determination and Finding ("D&F") document concluding that (1) urgent and compelling circumstances significantly affecting the interests of the United States will not permit waiting for GAO's decision in ATS' protest; and (2) continued contract performance was in the best interest of the United States. (Exhibit 1). Other than citing to these two bases for the override, the D&F does not specify the factors that apply to its urgent and compelling determination as opposed to the best interest determination. Further, despite the urgent and compelling assertion in the D&F, DOED did not award a contract until September 27, 2007, more than four and half months after the May 1 solicitation was issued.

In brief, DOED attempts to justify the CICA override based in large part on purported risks associated with continued CSC performance. Those risk assumptions are premised on network outages lasting for approximately four days in April 2007, before the Solicitation was issued. The Department also refers to an internal video application outage during April and May, 2007. The D&F does not indicate that any network outages have occurred since the Solicitation was issued. *See* Declaration of Todd Robyak (Exhibit 2).

In addition, the D&F attempts to quantify the potential outage costs to the Department

and compare those DOED projected costs to projected costs of terminating Perot if ATS' protest is sustained. DOED predicts outage costs of $1,152,000 per a day, but contains no support for that figure or for the conclusion that the network will experience any further outages during the pendency of ATS' protest. ATS asserts that CSC has addressed and corrected the outage issues and that no additional network outages have occurred since April 2007, a period of nearly six months. On information and belief, CSC is currently providing responsive, stable and adequate support to DOED users nationwide. Id. The D&F does not analyze the risk of network outages or other contract performance risks posed due to the fact that Perot will presumably have to transfer DOED's current Washington, DC based IT operations to Perot's Texas locations. With respect to termination costs, DOED estimates $5,366,692 in costs should it terminate Perot's contract as a result of ATS' bid protest, including transition, attorney fees and termination costs. Id.

Finally, in addition to the outage claims and associated costs, DOED seeks to support its CICA override on the basis of the possibility of losing CSC personnel working on the contract and DOED's general conclusion that extending CSC's current contract is "unacceptable."

**ARGUMENT**

To decide whether injunctive relief is appropriate here, this Court must weigh: (1) whether the party seeking the injunction has a strong likelihood of success on the merits; (2) whether the party seeking the injunction will be irreparably harmed if the injunction is denied; (3) whether the threatened irreparable injury would outweigh the harm that the injunction would cause the defendant or third parties; and (4) the impact of the injunction on the public interest. Conscoop-Consorzia Fra Cooperative Di Prod. E Lavoro v. U.S., 62 Fed. Cl. 219 (2004); Overstreet Electric Co. v. United States, 47 Fed. Cl. 728 (2000). In applying these tests, the

Court must consider the factors in relation to one another, so a stronger showing on one factor may offset a weaker showing on the other factors. Overstreet Electric, 47 Fed. CI. at 743.

**A. ATS Has A Strong Likelihood of Success On The Merits**

The standard of review by this Court of DOED's decision to override the CICA stay is whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." Superior Helicopter LLC v. United States, 78 Fed. Cl. 181, 187 (2007). The Department's decision is arbitrary and capricious if the agency: (1) relied on factors which Congress has not intended it to consider; (2) entirely failed to consider an important aspect of the problem; (3) offered an explanation for its decision that runs counter to the evidence before the agency; or (4) the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. Advanced Systems Development, Inc. v. United States, 72 Fed. Cl. 25, 30 (2006)(citations omitted). In examining the Department's override, the court "must determine whether the agency considered the relevant factors and made a rational decision based on those factors." Automation Technologies, Inc. v. United States, 72 Fed. Cl. 723, 727 (2006) (citations omitted); see also 78 Fed. Cl. at 187 (stating the court "must determine whether the agency's decision was based on a consideration of the relevant factors and whether there has been a clear error in judgment").

With respect to particular factors, this Court has looked at the agency's consideration of (1) whether significant adverse consequences would occur if the agency did not override the stay, (2) whether reasonable alternatives to the override were available, (3) how the benefits of overriding the stay compared to the potential cost of the override, including the costs associated with the potential that the protestor might prevail before GAO, and (4) the impact of the override on the competition and integrity of the procurement system. Id. at 189. For the following

reasons, ATS shows that DOED failed to adequately consider the relevant factors and provides insufficient consideration of Congressional intent in implementing CICA.

**1. The Grounds Asserted by DOED to Justify its Override of a Statutory Stay are Legally Insufficient**

Repeatedly, this Court has held that "the allegation that the new contract is better than the old one in terms of cost or performance" is not sufficient grounds to justify an override. Advanced Systems Development, Inc., 72 Fed.Cl. at 31 (citing PGBA, LLC v. United States, 57 Fed. Cl. at 655, 622 (2003)). Yet, this is the bottom-line justification provided by DOED here. Allowing such justifications for overriding a CICA stay would result in the override exception swallowing the Congressionally mandated rule that stays be automatic. Id. at 31. The Congressional intent of the automatic stay is to preserve the status quo during the pendency of the protest so that an agency would not cavalierly disregard the GAO's recommendation to cancel the challenged award." Id. at 30-31. More broadly, the purpose of the stay is to "preserve competition in contracting and ensure a fair and effective process at the GAO." Id. at 31. The Department completely fails to consider this important aspect in its decision.

Clearly, DOED is dissatisfied with the current contractor and that dissatisfaction resulted in the Solicitation in the first place. The D&F shows that DOED believes that it would receive superior services, and arguably incur less cost, by contracting with Perot as opposed to CSC.

DOED also rejects the possibility of extending the contract because the period of extension would be unacceptable to the Agency. As noted above, the fact that an agency desires to move forward with a new contract and prefers a new contractor to the current one nonetheless is legally insufficient to warrant an override.

**2. DOED's Determination to Override the Stay is Irrational**

DOED cites primarily to the network outages that occurred in April 2007 as justification for the override. Based on the facts, however, it is irrational to assert that four days of network outages that occurred nearly six months ago present sufficient risk of outages during the pendency of ATS' protest to justify an exception to the CICA stay. CSC has apparently addressed and rectified the causes of the network outages. But, DOED presumes that the possible occurrence of network outages with Perot as the prime contractor would be zero, while the probability with CSC as contractor would be significant. This conclusion is irrational. The transition to a new contractor can always present increased performance risks, especially when Perot, on information and belief, must relocate the current Washington, DC-based IT operations to Perot's Texas locations. (Exhibit 2). DOED failed to consider this aspect of the issue. DOED's irrational reliance on this argument is compounded by its citation to the costs that the Department would hypothetically incur as a result of network outages. The D&F contains no support for the Agency's figure of $1,552,000 in losses for each day of network outage, never mind the lack of support for the conclusion that multiple outages will occur before GAO issues it its decision if CSC permitted to perform.

DOED attempts to compare these outage costs to the costs it would incur if ATS' protest is sustained. According to the D&F, these costs to transition from Perot to ATS would total $5,366,692 including attorney fees and termination costs. Nevertheless, this figure emphasizes the irrational nature of DOED's logic -- these costs in fact support ATS' argument against the override because by permitting the stay to remain, the Department would avoid the termination and transition costs associated with replacing Perot with ATS if GAO sustains ATS' protest.

DOED's irrationally asserts that the potential and/or actual loss of employees working for

CSC justifies an override. The DOED's claims on this point are vague and nonspecific, but, in any procurement where an incumbent is unseated, some employees working under a long-term contract will tend to leave that contractor as the end of the contract approaches. This would occur whether the stay is implemented or not and does not represent unique or compelling circumstances justifying the stay override. In addition to being irrational, basing an override on such a frequent occurrence in federal procurement would swallow the purpose CICA override exception. See Id. at 31. To further undermine the Department's rationale, the D&F fails to consider the potential loss of employees if GAO sustains the protest. If Perot is permitted to continue performance, it likely will attempt to recruit and hire many of ATS' skilled and experienced personnel. Additionally, if Perot is allowed to continue contract performance, it will likely incur significant costs and enter into subcontract and vendor commitments that will make awarding the contract to ATS difficult.

**B. ATS Will Be Irreparably Harmed If The Injunction Is Denied**

The loss of a contract award and a bidder's loss of an opportunity to fairly compete has been recognized as an irreparable harm. SAI Indust. Corp. v. United States, 60 Fed.Cl. 731 (Fed. Cl. 2004). ATS will clearly be irreparably harmed by the loss of a $400 million contract , including option years, and the opportunity to fairly compete for this contract.

ATS and Perot were the only offerors for this contract. Allowing Perot to perform the contract materially harms ATS because ATS may lose a fair opportunity to recompete for the contract or obtain a directed award should it prevail at GAO. GAO's decision date is set for January 22, 2008, by which time Perot would have been performing for over three months. DOED would predictably resist any remedy which would disrupt that performance, and presumably would also claim significant termination costs. Additionally, Perot could gain an

advantage by performing for that time, giving it an edge in any recompetition, and would be able to recruit employees away from CSC and from ATS. *See* Labat-Anderson, Inc. v. United States, 65 Fed.Cl. 570, 580-581 (2005).

Thus, if the override is upheld, ATS may lose all opportunity to obtain the contract even if it prevails at GAO.

**C. The Harm To ATS Outweighs The Harm That The Injunction Would Cause The Agency**

The irreparable injury to ATS if no injunction is issued to reverse the override action far outweighs any inconvenience to DOED in extending CSC's performance for a few months. DOED issued the Solicitation in May 2007, but did not award the contract until September 27, 2007. Moreover, as indicated in the D&F the greatest harm DOED will incur as a result on an override is that it will delay performance of DOED's preferred contactor for a few months.

In contrast, the harm ATS will suffer as a result of an override is severe. This type of harm arising from a CICA override decision weighs very heavily in this third prong of the test for preliminary injunctive relief. T.S. Prod., Inc. v. United States, 48 Fed. Cl. 100, 112-113, (2000); Overstreet Elec., 47 Fed. Cl. at 743, 744. This far outweighs the little harm, if any, DOED will suffer if injunctive relief is granted because the work can be performed in the interim by CSC.

**D. Granting The Injunction Is In The Public Interest**

The central purpose of CICA was to promote the public interest through "full and open" competition in federal contracting. The automatic stay provisions and bid protest procedures function to support this aim. 72 Fed.Cl. at 31. While the government has an interest in efficiency of operations, this cannot come at the expense of complying with the high standards demanded as to procurement ethics, providing a fair and level playing field for all competitors, and

preserving the integrity of the public procurement process. *See* Mangi Env't Group, Inc., 47 Fed. Cl. 10 at 19-20 (2000). Accordingly, granting the injunction and reinstating the CICA stay will support rather than undermine the public interest in fair and equal procurement opportunities and full and open competition, the very basis for the implementation of CICA.

For the foregoing reasons, ATS respectfully argues that DOED's determination to proceed with contract performance despite having no sufficient justification for an override as required by CICA should not be permitted. ATS therefore requests that the Court grant the injunctive relief sought herein.

Dated: October 24, 2007

Respectfully submitted,

Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22101
Tel.: (703)749-1311
Fax: (703)714-8308

OF COUNSEL:
John G. Stafford
David T. Hickey
Sean M. Connolly

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | Case No.____________ |

**TEMPORARY RESTRAINING ORDER**

Upon consideration of Plaintiff Advanced Technology Systems, Inc.'s Application for a Temporary Restraining Order, the Complaint, the supporting Memorandum, and Exhibits, and after notice to all parties and a hearing, it is this ____ day of October 2007.

ORDERED, that Defendant, its officers, employees, agents and all other persons in active concert or participation with them are enjoined from further implementing Defendant's override of the automatic stay of performance imposed by the Competition in Contracting Act ("CICA") on Contract No. ED-07-CO-0042, awarded under RFP No. ED-07-R-0034 to Perot Systems Government Services, Inc. ("Perot") by the Department of Education ("DOED") and thereby allowing performance of said contract to proceed, until Plaintiff's Motion for Preliminary Injunction has been heard and decided.

ORDERED, that Plaintiff's Motion for Preliminary Injunction shall be heard on the _____ day of October 2007.

________________________________
Judge, U.S. Court of Federal Claims

Entered this ____ day of October 2007

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| ADVANCED TECHNOLOGY SYSTEMS, INC. | ) | Case No.______________ |
| Plaintiff, | ) | |
| v. | ) | |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**ORDER**

Upon consideration of Plaintiff Advanced Technology Systems, Inc.'s Motion for a Preliminary Injunction, the entire record herein, and the law applicable thereto, it is this day of _______ , 2007,

ORDERED, that Plaintiffs Motion is GRANTED; and therefore further

ORDERED, that Defendant, its officers, employees, agents and all other persons in active concert or participation with them are enjoined from (i) further implementing Defendant's override of the automatic stay of performance imposed by the Competition in Contracting Act ("CICA") on Contract No. ED-07-CO-0042, awarded under RFP No. ED-07-R-0034, by the Department of Education, and (ii) allowing performance of said contract to proceed.

ORDERED, that this injunction shall remain in effect until the Court enters a final judgment on the merits in this matter or the final resolution by the U.S. Government Accountability Office ("GAO") of Plaintiff's pending bid protest, B-310641.001, any subsequent corrective actions, and any further administrative or judicial review proceedings.

______________________________
Judge, U.S. Court of Federal Claims

Entered this___ day of October 2007.